1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff,
Zachary Zermay

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ZACHARY ZERMAY, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BCG ATTORNEY SEARCH,**<br><br>**Defendant.** | **Case No.: 2:22-cv-04778**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF FOR VIOLATIONS OF FLORIDA'S TELEPHONE SOLICITATION ACT ("FTSA"), FLA. STAT. §§ 501.059, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.    Plaintiff ZACHARY ZERMAY ("Mr. Zermay," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant BCG ATTORNEY SEARCH ("BCG" or "Defendant") in negligently and/or intentionally contacting Plaintiff on his cellular telephone, without prior express written consent, in violation of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §§ 501.059, *et seq*., as amended by Senate Bill No. 1120.[1]

2.    In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), in response to complaints about certain telemarketing practices.

3.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

4.    Similarly, in July of 2021, the Florida Legislature enacted a comprehensive new telemarketing law that arguably goes beyond the federal TCPA, referred to as Florida's "Mini-TCPA". This new law, CS/SB 1120, updates the Florida Consumer Protection Law and the Florida Telemarketing Act."[2]

5.    Pursuant to Fla. Stat. § 501.059(g), solicitation phone calls or texts, including such calls or texts made utilizing automated dialing or pre-recorded

---

[1] The amendment to the FTSA became effective on July 1, 2021.
[2] BlankRome, *Florida's "Mini-TCPA" May Be More Broad and More Severe Than Its Federal Telemarketing*, (July 15, 2021, Counterparthttps://www.blankrome.com/publications/floridas-mini-tcpa-may-be-more-broad-and-more-severe-its-federal-telemarketing; *see also*, CS/SB 1120, https://www.flsenate.gov/Session/Bill/2021/1120/BillText/er/PDF.

---

messages, are prohibited unless the caller has *prior express written consent of the called party*.[3]

6.     Under the Florida statute, "[a]ny telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2).

7.     Defendant is an attorney recruiting company that specializes in placing attorneys throughout the country at premier law firms.

8.     Upon information and belief, part of Defendant's business model is based on, at least in part, collecting personal data about prospective employment leads.

9.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

10.    Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

11.    Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

---

[3] *See*, Holland & Knight, *Florida's New Mini-TCPA: What You Need to Know*, (July 14, 2021), https://www.hklaw.com/en/insights/publications/2021/07/floridas-new-mini-tcpa-what-you-need-to-know.

## JURISDICTION AND VENUE

12.     Jurisdiction is proper under 28 U.S.C. § 1332(d)(2)(A) because Plaintiff is a resident of the State of Florida, and therefore is a citizen of a state different from Defendant, a corporation incorporated in Nevada, with its principal place of business in the County of Los Angeles, California.

13.     Plaintiff also seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call, in violation of the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

14.     Therefore, both diversity jurisdiction and the damages threshold under CAFA are present, and this Court has specific and general jurisdiction.

15.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant has its principal place of business in Los Angeles, California, and provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.

## PARTIES

16.     Plaintiff is an individual residing in the County of Fort Myers, State of Florida.

17.     Plaintiff is also a "called party" and a "consumer" as those terms are defined by Fla. Stat. Ann. § 501.059 (a) & (b).

18.     Upon information and belief, Plaintiff alleges that Defendant is a corporation whose state of incorporation is Nevada and principal place of business located at 20 S Altadena Dr, Suite 102, Pasadena, California 91107.

19.     Defendant directs, markets, and provides its business activities throughout the State of California and the State of Florida, including within this

judicial district.

20.     Defendant further, at all times relevant herein, is and was "doing business" in the state of Florida as that term is defined by Fla. Stat. Ann. § 501.059(e). Thus, Defendant is also a "telephone solicitor "as that term is defined by Fla. Stat. Ann. § 501.059(i).

**FACTUAL ALLEGATIONS**

21.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (239) XXX-3107 (the "3107 Number").

22.     The 3107 Number is, and at all times mentioned herein was, and is assigned to a cellular telephone service.

23.     The area code 239 is assigned to Southwestern Florida.

24.     Defendant transmitted sales calls in the form of one (1) text message per day on August 7, 2021; August 29, 2021; November 15, 2021; November 16, 2021; November 17, 2021; November 18, 2021; and November 20, 2021, from the telephone number (310) 564-0745 to the 3107 Number, without Plaintiff's prior express written consent.

25.     In total, Defendant sent Plaintiff seven (7) text messages between August 7, 2021, and November 20, 2021, without Plaintiff's express written consent.

26.     These text messages did not provide any instruction on how to make the text messages stop.

27.     Upon information and belief, these text messages were for the purpose of soliciting a sale of any consumer services.

28.     Moreover, upon information and belief, the text messages discussed above did not disclose the true first and last names of the sender.

29.     The above text messages are depicted below:



30.     On or about April 18, 2022, at approximately 10:45 a.m., Defendant transmitted telephonic sales calls in the form of text messages to the 3107 Number, from the telephone number (888) 341-4224, without Plaintiff's prior express written consent.

31.     On that day alone, Defendant transmitted a total of (12) twelve separate text messages from 9:45 a.m. until approximately 11:35 a.m. These

unwanted text messages are depicted below:



32.    These text messages did not provide any instruction on how to make the text messages stop.

33.    Upon information and belief, the above three hyperlinks (http://bcgs.li/epSIO; http://bcgs.li/duN4j; and http://bcgs.li/6vVum) are each leased or owned, and are also operated and maintained by Defendant.

34.     Each of the three hyperlinks above, when clicked, re-direct visitors to another website that each advertise a Florida based attorney job that contains a link where the visitor can "Apply" by submitting their resume and other personal information directly to Defendant.

35.     For example, the hyperlink indicated above received by Plaintiff via text message on April 18, 2022, at 11:06 a.m. (http://bcgs.li/epSIO) when clicked, re-directs         visitors         to         another         website, https://www.bcgsearch.com/jobdetail/7V1F237826/job.html     (the     "Recruiting Page"), which Plaintiff also alleges, upon information and belief, is leased or owned, and is operated and maintained by Defendant.

36.     When someone visits the Recruiting Page, Defendant directs visitors to "APPLY NOW" by providing their resume and other personal information to Defendant.

37.     Defendant further instructs visitors on the Recruiting Page that "Your information will not be forwarded to any employers at this time. A recruiter will contact you with more information once our internal review of your resume is completed." *Id*.

38.     The April 18, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

39.     On April 19, 2022, at 10:36 a.m. Defendant transmitted additional telephonic sales calls in the form of two text messages to the 3107 Number, again from the telephone number (888) 341-4224, without Plaintiff's prior express written consent.

40.     The April 19, 2022, text messages are depicted below:

1
2
3
4
5
6
7
8
9



10   41.   Like the text messages received the previous day, on April 18, 2022,
11  the April 19, 2022, text messages also contained a hyperlink (http://bcgs.li/f71pD)
12  that is leased or owned, and operated and maintained by Defendant that when
13  clicked             leads              to              another            webpage
14  (https://www.bcgsearch.com/jobdetail/HZZ5253474/job.html)    advertising    a
15  Florida attorney job opening.

16   42.   This link also contains an "APPLY" button where a visitor is instructed
17  to submit their resume and other personal information directly to Defendant.

18   43.   The April 19, 2022, text messages sent by Defendant to the 3107
19  Number contained no method for Plaintiff to instruct Defendant to stop sending
20  Plaintiff the unwanted text messages.

21   44.   Plaintiff received substantially similar text messages from Defendant
22  to the 3107 Number again on April 20, 2022.

23   45.   Specifically, Plaintiff received a total of twelve (12) text messages on
24  April 20, 2022, between approximately 9:40 a.m. until 1:35 p.m. from telephone
25  number (888) 341-4224, without Plaintiff's prior express written consent.

26   46.   The April 20, 2022, text messages are depicted below:

27
28



47.   These, like prior text messages, did not provide any instruction on how

to make the text messages stop.

48.     The above April 20, 2022, text messages also contained the same hyperlink from the April 18, 2022, text message received at 11:06 a.m. (http://bcgs.li/epSIO) that when clicked, re-directs visitors to the Recruiting Page.

49.     The April 20, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

50.     Plaintiff received substantially similar text messages from Defendant to the 3107 Number again on April 21, 2022.

51.     Specifically, Plaintiff received a total of four (4) text messages on April 21, 2022, between approximately 11:35 a.m. and 12:30 p.m. from telephone number (888) 341-4224, without Plaintiff's prior express written consent.

52.     The April 21, 2022, text messages Plaintiff received from Defendant's (888)341-4224 number are depicted below:



53.     These, like prior text messages, did not provide any instruction on how to make the text messages stop.

54.     Upon    information    and    belief,    the    above    hyperlinks (http://bcgs.li/f71pD;    http://bcgs.li/QsXHw;    and    http://bcgs.li/msv91; http://bcgs.li/UK8q2) are leased or owned, and operated and maintained by

Defendant.

55.    At least one of the hyperlinks contained in the above text messages (http://bcgs.li/f71pD) lead to a webpage (https://www.bcgsearch.com/jobdetail/HZZ5253474/job.html) advertising a Florida attorney job opening.

56.    This link also contains an "Apply Now" button where a visitor is instructed to submit their resume and other personal information directly to Defendant.

57.    Another hyperlink (http://bcgs.li/QsXHw) leads to a webpage (https://www.bcgsearch.com/bcgcandidatefirmlist.php?ckkid=fe4d05a6a2ab0a5dc b66840fd250f7cd&amp;dt=20220421122136) asking Plaintiff to "review and approve" a "customized list of firms" believed to be a "good fit" for Plaintiff.

58.    Like the text messages received the previously, the above April 21, 2022, text messages also contained hyperlinks that when clicked, re-directed visitors to the Recruiting Page.

59.    The April 21, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

60.    On April 21, 2022, at approximately 3:34 p.m., Defendant also transmitted a telephonic sales call in the form of a text message to the 3107 Number, from the telephone number (626) 238-0440, without Plaintiff's prior express written consent.

61.    This time, the April 21, 2022, text message from the (626) 238-0440 telephone number instructed Plaintiff to fill out an attorney search questionnaire.

62.    The April 21, 2022, text message is depicted below:



63.     Upon    information    and    belief,    the    above    hyperlink
(http://bcgs.li/0p3NJ)  is  leased  or  owned,  and  operated  and  maintained  by
Defendant.

64.     When clicked, the above hyperlink takes the visitor to a new webpage
(https://www.bcgsearch.com/candidate_acli_form_perfect_job.php?ckkid=fe4d05
a6a2ab0a5dcb66840fd250f7cd) that is titled, "Additional Information Form."

65.     The Additional Information Form on that website further reads:

> Dear Zachary,
> We want to get to know you so we can find you the perfect
> job!
> Fill out this questionnaire with as much detail as you can.
> Please take your time and elaborate on all your answers.
> The more information we have, the better.
> Click 'Submit' when you're done

66.     The Additional Information Form also contains a fillable form that
requests  information  such  as:  (1)  current  practice  areas;  (2)  preferred  search
locations for jobs; (3) the states in which he is admitted to practice; (4) salary range
requirements; (5) new positions he is looking for; (6) Plaintiff's ideal job; (7) what
made  Plaintiff  choose  to  be  any  attorney;  (8)  positive  comments  Plaintiff  has
received  from  peers;  (9)  achievements  or  honors;  (10)  where  Plaintiff  is  from,
family, talents, hobbies, interests, what he does in his free time, etc.; (11) jobs he
has already applied for; (12) speed in which Plaintiff is seeking a new position; (13)
Plaintiff's  current  law  firm's  main  competitors;  (14)  Plaintiff's  LinkedIn  and

employer profile links; (15) email address; and (16) a photo of Plaintiff.

67.   The April 21, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

68.   Plaintiff received substantially similar text messages from Defendant to the 3107 Number again on April 22, 2022.

69.   Specifically, Plaintiff received a total of twelve (12) text messages on April 22, 2022, between approximately 11:39 a.m. and 3:03 p.m. from telephone number (888) 341-4224, without Plaintiff's prior express written consent.

70.   The April 22, 2022, text messages are depicted below:



71.     These, like prior text messages, did not provide any instruction on how to make the text messages stop.

72.     Like the text messages received the previously, the above April 22, 2022, text messages also contained the same hyperlink from the April 20, 2022, text message received at 12:08 p.m. (http://bcgs.li/duN4j) that when clicked, re-directs visitors to the Recruiting Page.

73.     The April 22, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

74.     Plaintiff received substantially similar text messages from Defendant to the 3107 Number again on April 23, 2022.

75.     Specifically, Plaintiff received a total of two (2) text messages on April 23, 2022, at approximately 11:35 a.m. from telephone number (888) 341-4224, without Plaintiff's prior express written consent.

76.     The April 23, 2022, text messages are depicted below:



77.     These, like prior text messages, did not provide any instruction on how to make the text messages stop.

78.     Like the text messages received previously, the above April 23, 2022, text messages also contained the same hyperlink from the April 21, 2022, text

message received at 11:35 a.m. (http://bcgs.li/f71pD) that when clicked, re-directs visitors to the Recruiting Page.

79.    The April 23, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

80.    Plaintiff received substantially similar text messages from Defendant to the 3107 Number again on April 24, 2022.

81.    Specifically, Plaintiff received a total of two (2) text messages on April 24, 2022, between approximately 11:39 a.m. and 12:01 p.m. from telephone number (888) 341-4224, without Plaintiff's prior express written consent.

82.    The April 24, 2022, text messages are depicted below:



83.    These, like prior text messages, did not provide any instruction on how to make the text messages stop.

84.     Like previous text messages, the April 24, 2022, text messages sent by Defendant to the 3107 Number contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

85.     Finally, on April 26, 2022, Plaintiff decided to text "STOP" from his 3107 Number to Defendant's (888) 341-4224 number.

86.     In response to Plaintiff's text message, Plaintiff received the following text message from Defendant's (888) 341-4224 number:



87.     In total, Defendant, or its agent, sent Plaintiff at least 56 text messages.

88.     Plaintiff does not have a business relationship with Defendant.

89.     Plaintiff never provided Defendant with prior express written consent to be contacted for solicitation purposes as required by the FTSA.

90.     Upon information and belief, the above-mentioned text messages were sent by Defendant for the purpose of obtaining further demographic information about Plaintiff (like his current employment status, salary information, experience, geographic location, etc.) which is information that can be used to solicit the sale of "consumer goods and services" and/or the extension of credit.

91.     Further, upon information and belief, the above-mentioned text messages failed to properly provide notice to Plaintiff of the identity of the sender of the messages.

92.     Pursuant to Fla. Stat. § 501.059(2), Defendant, including its employees and/or agents placing calls on its behalf, are required to identify themselves by "his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is

the object of the telephone solicitation."

93.    Because Plaintiff is alerted when a text message is received to Plaintiff's cellular device, the unsolicited text message that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy, and distracted and aggravated Plaintiff upon receipt.

94.    Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text messages *en masse* to thousands of consumers throughout the State of Florida.

95.    Upon information and belief, the automated text messaging system used by Defendant to send the text messages was an "automated system" as defined by the FTSA.

96.    Upon information and belief, Defendant utilized an "automated system" because the text messages sent to the 3107 Number were sent *en masse* and without human intervention; and because the hardware and software used by Defendant to send such messages utilized an automated system for the selection or dialing of telephone numbers.

97.    The text messages at issue sent by Defendant to the 3107 Number in April of 2022 constituted an "telephonic sales call" as prohibited by the FTSA, as Defendant sent the text message to Plaintiff in order for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, and/or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.

98.    Defendant's telephonic solicitations to Plaintiff were not made: (1) in response to an express request to receive such automated text messages; (2) in connection with an existing debt or contract; or (3) by a newspaper publisher or his or her agent or employee in connection with his or her business. Further, Plaintiff does not currently have a prior or existing business relationship with Defendant.

Thus, such contacts were "unsolicited telephonic sales calls" as defined by Fla. Stat. § 501.059(1)(k).

99.     Plaintiff never provided "prior express written consent' or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit text messages to the 3107 Number by means of "automated system for the selection or dialing of telephone numbers or the playing of a recorded message" within the meaning of Fla. Stat. § 501.059(g) & (8).

100.    Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically protected by the FTSA.

101.    Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated and distressed that Defendant annoyed Plaintiff with the unwanted telephonic sales calls, without Plaintiff's prior express written consent.

102.    The text messages from Defendant, or its agent(s), violated Fla. Stat. § 501.059.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

104.    Plaintiff represents, and is a member of, the Class, which is defined as follows:

> All persons with a Florida area code who, (1) received a call or text message requesting their personal information, (2) to their cellular telephone, (3) using the same equipment or type of equipment utilized to contact Plaintiff's cellular telephone number.

105.    Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and

the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

106.    Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

107.    The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

108.    The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages to thousands of cellular telephones of persons residing within Florida during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

109.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  Those common questions of law and fact include, without limitation, the following:

a)   Whether within the four years prior to the filing of this Complaint, Defendant or affiliates, subsidiaries, or agents of Defendant sent any text messages without the prior express written consent of Plaintiff and Class members using an "automated system";

b)   Whether Defendant or affiliates, subsidiaries, or agents of

Defendant transmitted advertising telephonic sales calls (including text messages) to Plaintiff's and Class members' cellular telephones;

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by Fla. Stat. § 501.059(g)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether the complained of conduct was knowing or willful;

e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

110. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

111. Plaintiff represents and is a Class member of the Class because Plaintiff received several telephone sales call (in the form of text messages) through the use of an automated system, without having given prior express written consent to the Defendant within the meaning of the FTSA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

112. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as

alleged herein.

**Adequacy**

113.   Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of federal and state telemarketing laws. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member.  Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

114.   Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

115.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Even if every individual Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

116.   Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member.  Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law.  Plaintiff anticipates no difficulty in the management of this case as a class action.

117.   The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

118.   The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

119.   Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole.

120.   Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

121.   The Class may also be certified because:

(a)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

122.   This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

## FIRST CAUSE OF ACTION

## NEGLIGENT VIOLATIONS OF FLORIDA'S TELEPHONE SOLICITATION ACT ("FTSA"), FLA. STAT. §§ 501.059, *ET SEQ.*

123.   Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

124.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

125.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation

of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g) (emphasis added).

126.   "Prior express written consent" means an agreement in writing that:

a) Bears the signature of the called party;

b) Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

c) Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

d) Includes a clear and conspicuous disclosure informing the called party that:

i. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

ii. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

127.   Further, the FTSA requires that, "[a]ny telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging

device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2).

128.   Defendant failed to secure the requisite prior express written consent from Plaintiff and Class members before sending them solicitation calls or text messages.

129.   In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

130.   Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a).

131.   Further, Defendant (including its employees and/or agents) failed to identify themselves by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation.

132.   As a result of Defendant's conduct, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation for each negligent violation pursuant to Fla. Stat. § 501.059(10)(a). Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

### SECOND CAUSE OF ACTION

### WILLFUL AND/OR KNOWING VIOLATIONS OF FLORIDA'S TELEPHONE SOLICITATION ACT ("FTSA"), FLA. STAT. §§ 501.059, *ET SEQ.*

133.   Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

134.   At all relevant times, Defendant knew or should have known that its

conduct as alleged herein violated the FTSA.

135.   Defendant knowingly and willfully failed to secure the requisite prior express written consent from Plaintiff and Class members.

136.   Defendant knew that it did not have prior express written consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice in violation of the TCPA.

137.   For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and Class members yet disregarded such information and placed illegal and unwanted solicitation calls.

138.   In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

139.   Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a).

140.   Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express written consent to receive such calls (and also in light of dozens of text messages sent by Defendant to Plaintiff in a short period of time), the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § Fla. Stat. § 501.059(10)(b) of the FTSA.

141.   Also, in violation of Fla. Stat. § 501.059(2), Defendant, including its employees and/or agents, knowingly failed to identify themselves by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation.

142.   As a result of Defendant's conduct, Plaintiff and Class members were

harmed and are each entitled to a minimum of $1,500.00 in damages for each willful and/or knowing violation pursuant to Fla. Stat. § 501.059(10)(b).  Plaintiff and the Class members are also entitled to an injunction against future calls pursuant to Fla. Stat. § 501.059(10)(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- An order certifying the Class and appointing Plaintiff the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;
- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of the FTSA pursuant to Fla. Stat. § 501.059(10)(a);
- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of the FTSA pursuant to Fla. Stat. § 501.059(10)(b);
- Pre-judgment and post-judgment interest;
- An order declaring that Defendant's actions, set out above, violate the FTSA;
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to Fla. Stat. § 501.059(10)(a);
- Costs of suit;
- An award of reasonable attorneys' fees, pursuant to, *inter alia*, the common fund doctrine and/or to Fla. Stat. § 501.059(11);
- Any other further relief that the court may deem just and proper.

### JURY DEMAND

143.   Pursuant to the Seventh Amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: July 13, 2022                          Respectfully submitted,

                                              **KAZEROUNI LAW GROUP, APC**


                                              By:   s/ ABBAS KAZEROUNIAN
                                                    ABBAS KAZEROUNIAN, ESQ.
                                                    ak@kazlg.com
                                                    ATTORNEY FOR PLAINTIFF